IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TEMPCO ELECTRIC HEATER CORPORATION,<br>   an Illinois Corporation<br><br>               PLAINTIFF,<br><br>   v.<br><br><br>J.L. BECKER CO., INC.,<br>d/b/a J.L. BECKER COMPANY<br>   a Michigan Corporation<br><br>               DEFENDANT. | Case No.:  08 CV 2870<br><br>Judge: Milton I. Shadur<br><br>Mag. Judge: Keys |

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANT'S MOTION FOR CHANGE OF VENUE**

**INTRODUCTION**

      This is a case about a "lemon" annealing furnace ("furnace") that Tempco Electric Heater Corporation ("Tempco") purchased from J.L. Becker Co., Inc. d/b/a J.L. Becker Company ("Becker").  From the moment it was assembled in Tempco's Illinois' facility, the furnace has never worked properly.  The furnace has not met the operational specifications set forth in the parties' contract, is unable to deliver quality product, and poses a serious safety risk to Tempco and its employees.  As the furnace sits idle in Tempco's facility, it provides a giant reminder of Becker's failure to deliver what Tempco contracted for.

      Tempco repeatedly tried to work with Becker to have the furnace problems addressed.  After many months of detailing the furnace issues and providing Becker the opportunity to fix them, Tempco finally told Becker that it had had enough—Becker's furnace simply was not

WHD\5942204.2

going to work.  Tempco subsequently provided written notice to Becker on both April 11th and 22nd 2008, that unless Becker removed the furnace and refunded Tempco its money by 5 p.m. on April 25, 2008, Tempco would pursue legal action.  However, instead of providing a favorable response, Becker sprinted to the Wayne County, Michigan courthouse and filed a Summons and Complaint late in the afternoon on April 25th.

There is little question that Becker's Michigan lawsuit is an anticipatory action filed only in response to Tempco's imminent threat of legal action.  From a timing standpoint, it was filed as the clock was striking midnight on Tempco's deadline.  Further, from a substantive standpoint, Becker's claim seeks payment for the remaining 20% of the furnace purchase price—an amount that by the terms of the parties' contract is not due until the furnace is debugged and becomes operational.  Moreover, Becker **never** made a demand to Tempco for payment of this amount prior to filing its suit in Michigan.

Given the anticipatory nature of Becker's Michigan filing, this Court should not afford the typical deference provided to a "first filed" action.  Rather, it is necessary for the Court to focus on whether Becker has submitted sufficient facts to satisfy its burden of proof that the Eastern District of Michigan is a clearly more convenient forum to resolve the parties' dispute.  As Becker presents nothing in its four page brief to establish that a transfer would do anything more than shift convenience from one party to another, Tempco respectfully requests that this Court deny Becker's motion.

## FACTUAL BACKGROUND

When Tempco was faced with the need to replace its aging Seco/Warwick annealing furnace for the manufacturing of its tubular heating element product lines, it ultimately turned to Becker.  (Wickland Decl. Ex. 2 ¶¶ 2-6.)  In return for the purchase price of $362,900.00, Becker agreed to design, manufacture, assemble and install a furnace at Tempco's Wood Dale, Illinois

2

manufacturing facility. (*Id.* ¶¶ 7-8.) The purchase contract between the parties requires Becker to provide Tempco with a furnace that would be capable of achieving very specific atmospheric and environmental conditions to allow Tempco to produce quality annealed tubular heating elements. (*Id.* ¶ 8, Ex. B.) However, from day one, the Becker furnace has suffered from several serious and significant non-conforming defects that has rendered the Becker furnace non-operational and of no value to Tempco. (*Id.* ¶ 12.)

Beginning in November of 2007, Tempco notified Becker of the significant non-conforming defects with the annealing furnace. (*Id.* ¶ 13.) This began a repeating cycle over the course of the next several months with Tempco providing information of the furnace problems along with demand for corrective action and Becker responding with promises of action that consistently fell short. (*Id.* ¶¶ 13-16.) Finally, with Becker unable to solve the numerous and substantial non-conforming defects affecting the operation of the annealing furnace, Tempco informed Becker on April 11, 2008 and again on April 22, 2008, that enough was enough—Tempco simply wanted a full refund of all monies paid and removal of the furnace from Tempco's Wood Dale, Illinois facility. (*Id.* ¶¶ 17-19, Exs. C-D.) Each letter concluded with the demand that Becker refund Tempco's monies and remove its annealing furnace from Tempco's Wood Dale, Illinois facility by 5:00 p.m. on April 25, 2008 or Tempco would turn the matter over to its legal counsel to initiate immediate legal action. (*Id.*)

Without ever previously demanding payment for the outstanding balance on the furnace, Becker raced to the courthouse and filed an action against Tempco in Michigan for collection of the unpaid portion of the purchase price; an action that was filed in the Circuit Court of Wayne County on **April 25, 2008**, just moments before Tempco's April 25th response deadline was set to expire. (*Id.* ¶¶ 20-22.) Tempco was served with the Michigan Summons and Complaint by certified mail

3

on or about May 2, 2008. (*Id.* ¶ 20.) Tempco subsequently removed Becker's action from Wayne County, Michigan to the Eastern District of Michigan on May 29, 2008. At the same time, Tempco filed its Answer and asserted its compulsory counterclaims.[1] On July 3, 2008, Tempco filed its Motion to Dismiss, Stay or Alternatively, Transfer Venue with the Michigan court. (*Id.* ¶¶ 2-4, Exs. 1-3.) This motion requests the Michigan court to stop Becker's action while this one proceeds.

## ARGUMENT

With regard to change of venue, 28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The first question for changing venue is whether litigation is appropriate in the present forum and/or the forum the party seeks to transfer the matter to. Under 28 U.S.C. § 1391(a)(2), venue in a diversity action is proper in any district in which "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." "The test for venue under 28 U.S.C. § 1391 focuses on the location of the events giving rise to the cause of action." *Schwartz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 834 (N.D. Ill. 2004). "To be 'substantial,' the events that occurred in the forum district must be a part of the historical predicate of the claim." *Id.*

Under the foregoing standards, the parties' activities make it abundantly clear that a substantial part of the events giving rise to the claim occurred in the Northern District of Illinois—not the Eastern District of Michigan. Tempco is a longstanding Illinois corporation who was solicited by Becker to purchase a new furnace. From contract negotiation to delivery, install, assembly and attempted operation and fixes, all of these actions involve Illinois. Further,

---

[1] While Fed. R. Civ. P. 13(a) required Tempco to assert its counterclaims in the Michigan action, it does not bar Tempco from asserting this independent action. *See Inforizons, Inc. v. VED Software Servs., Inc.,* 204 F.R.D. 116, 118 (N.D. Ill. 2001).

4

the furnace remains in its non-operational condition on Tempco's production floor located in Wood Dale, Illinois. It follows that not only is the Northern District of Illinois a technically proper venue; it is the most proper venue.

In deciding a discretionary motion to transfer venue pursuant to 28 U.S.C. § 1404(a), the court considers "the plaintiff's choice of forum, the convenience of the parties and the witnesses, as well as the interest of justice." *Roberts & Schaefer Co. v. Merit Contracting, Inc.,* 99 F.3d 248, 254 (7th Cir. 1996). "[T]hese factors are best viewed as placeholders for a broader set of considerations, the contours of which turn upon the particular facts of each case." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 n.3 (7th Cir. 1986). "The party seeking transfer 'has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient.'" *First Nat'l Bank v. El Camino Res., Ltd.,* 447 F. Supp. 2d 902, 912 (N.D. Ill. 2006). Becker has not shown that the combination of transfer factors establishes Michigan as the clearly more convenient forum. Rather, the facts show that Illinois is the best forum for the resolution of this dispute.

I. **THE PRIVATE INTEREST FACTORS OF THE LITIGANTS**

"In determining whether the transfer will actually serve the convenience of the parties and witnesses and the interests of justice, courts analyze the private interests of the parties and the public interests of the court." *First Nat'l,* 447 F. Supp. 2d at 911. "The factors relevant to considering the parties' private interests are: '(1) plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease and access to sources of proof, (4) the convenience of the parties and (5) the convenience of the witnesses.'" *Id.* at 911-912. It is readily apparent that the private interest factors favor having this case tried in the Northern District of Illinois.

5

A.  **Plaintiff's Choice of Forum**

The defendant who seeks a transfer of venue carries a difficult burden. "A plaintiff's choice of forum is entitled to substantial weight under section 1404(a), particularly where it is also the plaintiff's home forum. *Schwartz*, 317 F. Supp. 2d at 835. "The party seeking transfer has the burden of establishing whether the balance of factors weighs significantly in favor of the transfer." *W.A. Foote Mem'l Hosp. Inc. v. Electronic Data Sys. Corp.*, No. 86-C-4177, 1987 WL 9001, at *3 (N.D. Ill. Mar. 27, 1987).

Tempco's decision to bring an action against Becker in Illinois, where Tempco is based and where the furnace at issue was delivered, assembled, installed, worked on and presently located, is an important consideration. Becker has not met, and cannot meet, its burden of showing that the court should ignore this significant factor. Because there is nothing "clear-cut" to suggest that convenience and justice demand that the action be heard in Michigan, Tempco's decision to file this action here should not be disturbed.

Becker argues, however, that the Court should set aside Tempco's choice of forum because it filed its Michigan action first. "Under this 'first to file' rule, district courts normally stay or transfer a federal suit 'for reasons of wise judicial administration…whenever it is duplicative of a parallel action already pending in another federal court.'" *Schwartz*, 317 F. Supp. 2d at 833. "The Seventh Circuit, however, does not rigidly adhere to a 'first to file' rule." *Id.* Rather, "[s]econd-filed actions may proceed where favored by the interests of justice." *Id.* "Similarly, courts refuse to enforce the first to file rule where forum shopping motivated the first-filed action or the first-filed action constitutes an 'improper anticipatory filing' made under threat of an imminent suit and asserting the mirror-image of that suit in another district." *Id.*

John Becker, in his declaration, states that the only reason Becker filed suit on April 25, 2008 in Michigan was because Tempco had not provided final payment for the furnace.

However, the timing of events highlights the absurdity and falsity of Mr. Becker's self-serving statement. After allowing several months for Becker to get the furnace to work properly, Tempco provided two written notices stating that unless the furnace was removed and Tempco's money was returned by 5 p.m. on April 25, 2008, Tempco would proceed with litigation. In obvious anticipation of what Becker knew would happen when it did not comply with Tempco's demands, Becker filed suit in Michigan on the afternoon of April 25th. Moreover, the Michigan lawsuit presented a payment issue that was never previously raised with Tempco, and is purely derivative of the true dispute—whether the furnace worked as required by the parties' contract.

There are several policy arguments favoring setting aside the common deference afforded to first filed actions when they were done in anticipation of suit by another party. "First, allowing a potential defendant to make a procedural preemptive strike robs that natural plaintiff of his ability to select his forum. Second, prohibiting a 'race to the courthouse,' encourages settlement and discourages costly duplicative litigation." *Clear!Blue, LLC v. Clear Blue, Inc.*, 521 F. Supp. 2d 612, 614 (E.D. Mich. 2007)(quoting *Essex Group, Inc. v. Cobra Wire & Cable, Inc.*, 100 F. Supp. 2d 912, 915 (N.D. Ind. 2000). Further, the first filed rule is usually disregarded when the competing suits are filed within a short time of each other. *See Ontel Prods., Inc. v. Project Strategies Corp.,* 899 F. Supp. 1144, 1153 (S.D.N.Y. 1995).

The case law makes clear that Becker should not benefit from its gamesmanship in racing Tempco to the courthouse. Yet, granting Becker's motion would not only deprive Tempco's of its rightful standing as the true plaintiff, but would discourage parties like Tempco from trying to achieve pre-suit resolution. As for concerns of duplication and potentially inconsistent rulings, Tempco has already presented this issue to the Eastern District of Michigan Court in its motion seeking to have the Michigan action either: (a) dismissed; (b) stayed pending resolution of this

lawsuit; or (c) transferred to this Court. Given the pendency of Tempco's motion in Michigan which should resolve the concern of multiple lawsuits and the equitable reasons not to apply the typical deference afforded to "first filed" actions, this choice of forum factor weighs heavily against transfer.

### B. The Location of the Operative Facts

The record makes clear that the operative facts at issue are linked with the Northern District of Illinois, not Michigan. Tempco filed this action because the furnace that remains in its Illinois facility has never worked properly. From assembly, to installation, to attempts at trying to make the furnace operational, all of these operative facts are tied in to Tempco's Wood Dale, Illinois facility and the furnace that remains there. Moreover, Becker was present at Tempco's Wood Dale, Illinois facility on at least twenty-three (23) different dates in an attempt to cure the non-conforming defects plaguing the furnace; attempts that never succeeded. Given that the operation of the furnace is the true issue in this case, there is little doubt that the Northern District of Illinois has a meaningful connection with the events leading to this dispute and is the more appropriate forum in which to litigate.

### C. The Convenience of the Parties and Witnesses.

When the plaintiff and defendant are in different states, there is no choice of forum that will avoid imposing inconvenience on one or the other, but "the tie is awarded to the plaintiff." *In re Nat'l Presto Indus., Inc.,* 347 F.3d 662, 665 (7th Cir. 2003.) Stated another way, the law is clear that it is not a sufficient reason to transfer venue and such transfer should be denied where the transfer merely shifts the inconvenience from one party to another. *Graham v. United Parcel Serv.,* 519 F. Supp. 2d 801, 811 (N.D. Ill. 2007). Further, if a defendant is to establish why a court would not merely be shifting convenience, it must "clearly specify the key witnesses to be called and make a general statement of their testimony." *Fondrie v. Casino Res. Corp.,* 903 F.

Supp. 21, 24 (E.D. Wis. 1995); *see also North Shore Gas Co. v. Salomon, Inc.*, 152 F.3d 642, 648 n.3 (7th Cir. 1998) (affirming a denial of a motion to transfer venue because the movant had failed to show how the evidence and witnesses were relevant).

Other than John Becker, Becker has not specifically identified **any** party witness who has information relevant to this dispute. Further, Becker has not identified **any** non-party witnesses who have information relevant to this dispute. It is evident that moving this matter from the location of Tempco's operations, witnesses and documents[2] to Becker's home forum, would merely be shifting the convenience of the parties. As a result, this factor weighs against transfer.

### D.    Relative Ease and Access to Sources Of Proof.

"When [access to] documents are easily transferable, access to proof is a neutral factor." *First Nat'l Bank, LTD,* 447 F. Supp. 2d at 912. In other words, a defendant must show that crucial documents cannot be brought to the forum for location of documents to be an important factor. *Lambert v. Pem-America, Inc.,* No. 03-C-3330, 2004 WL 422636, at * 3 (D.C. Ill. Feb. 12, 2004). "As is the case with assertions regarding the convenience of witnesses, a general allegation by the movant that transfer is necessary under Section 1404(a) because of the location of books and records is not enough to prevail on the motion. For the point to be given weight by the transferor court, the moving party must establish the location of the documents in question, their importance to the resolution of the case, and their inability to be moved or effectively copied easily." 15 Charles A. Wright et al., *Federal Practice and Procedure* § 3853, at 245 (3d ed. 2007).

Becker's brief makes no mention of the location of its documents, let alone their importance to resolving this matter or their inability to be easily produced. In fact, the only mention of a potential location of proof is the reference to Becker's manufacturing process and

---

[2] See (Wickland Decl. Ex. 1 ¶¶ 26-27).

9

equipment being located in Michigan. (Def. Br. at 3.) Yet, Becker fails to explain how its manufacturing equipment or process is relevant to this case.

Becker not only fails to meet its burden of proof on this factor, but is also playing fast and loose with the facts. While the furnace was indeed shipped to Illinois, it is hardly "mobile." First, it was shipped in pieces and assembled in Tempco's facility over the course of over a month. (Wickland Decl. Ex. 2, ¶ 11.) Second, the furnace is approximately over 30 feet in length, and part of the furnace rests on a second story mezzanine, all of which consumes a relatively significant part of Tempco's limited production floor space. (*Id.* ¶ 5.) In addition, Tempco estimates that it would take approximately a week to disassemble and remove the Becker furnace from its facility. (*Id.*) Whether because of its failure to provide any explanation relative to its documents or any other proof, to the location of the key piece of proof, the furnace, this factor does not favor transfer.

## II. THE PUBLIC'S INTEREST

This factor primarily concerns judicial efficiency and economy. Public interests include docket congestion, "the court's familiarity with applicable law and the desirability of resolving controversies in their locale." *Sage Prods., Inc. v. Devon Indus., Inc*. 148 F.R.D. 213, 216 (N.D. Ill. 1993). When these factors are considered, it is readily apparent that the public interest also weighs heavily against the requested transfer. It is consistent with the public interest for the Northern District of Illinois to try a matter, such as this one, that is so inextricably connected to it. As has been noted, the furnace was purchased by an Illinois company, and subsequently assembled, installed and operated in Tempco's Illinois facility. In addition, the furnace presents a serious safety risk to both Tempco and the Illinois residents who work at the facility due to the melting and burning of electrical connections on the furnace all of which represents a portion of the non-conforming defects affecting the proper operation of the furnace. Moreover, the contract

calls for the application of Illinois law.[3] Nothing about this matter suggests that a Michigan court would be better suited to try this case than an Illinois Court.

## CONCLUSION

The private and public interest factors do not heavily weigh in favor of transferring venue from this Court to the Eastern District of Michigan. Nor, can Becker wield the "first to file" doctrine as grounds to divest jurisdiction given the timing and nature of its Michigan filing. Simply put, Becker has not come anywhere close to satisfying its burden of proof to establish that the Eastern District of Michigan is clearly a more convenient forum than this Court. As a result, Tempco respectfully requests that Becker's motion be denied.

Dated this 25th day of July, 2008.

Ann Maher
Eric J. Meier
WHYTE HIRSCHBOECK DUDEK S.C.
555 East Wells Street, Suite 1900
Milwaukee, WI 53202
Phone: (414) 273-2100

Cara Houck, Esq., Local Counel
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
225 W. Washington Street
Suite 2600
Chicago, IL 60606
Phone: (312) 460-4239

By: s/Joseph E. Gumina
Joseph E. Gumina
O'Neil, Cannon, Hollman, De Jong SC
111 E Wisconsin Ave # 1400
Milwaukee, WI 53202-4807
Phone: (414) 291-4715

**ATTORNEYS FOR PLAINTIFF**

---

[3] "Certainly, the Northern District of Illinois is more familiar with Illinois law, which governs five of eight counts in the complaint, than the District of Arizona." *Schwartz*, 317 F. Supp. 2d at 837 (*citing TruServ Corp. v. Neff,* 6 F. Supp. 2d 790, 793)(N.D. Ill. 1998).

11

WHD\5942204.2